

# THE ATTORNEY GENERAL

## OF TEXAS

GERALD C. MANN
XXXXXXXXXXXX
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Hon. R. R. Wright, Superintendent
Texas School for the Deaf
Austin, Texas

Dear Sir:

> Opinion No. 0-1330
> Re: Would Texas School for the Deaf be permitted to employ
> students without compensating them any more than to
> give them their room, board and laundry under the ap-
> propriation bill for the eleemosynary institutions?

We are in receipt of your letter of August 24, 1939, in which you
ask for an opinion on the following question:

"Would I be permitted to employ students without compensat-
ing them any more than to give them their room, board and laundry
under the appropriation bill for the eleemosynary institutions?"

H.B. No. 256 of the Forty-sixth Legislature makes appropriations
for the support, maintenance, and improvement of the eleemosynary and re-
formatory institutions of Texas, including the Texas School for the Deaf at
Austin, for the two-year period beginning September 1, 1939 and ending
August 31, 1941.

Section 1 provides as follows:

"That the several sums of money herein specified, or so
much thereof as may be necessary, are hereby appropriated out
of any moneys in the State Treasury not otherwise appropriated,
or out of special funds as may be shown, to the several Eleemosy-
nary and Reformatory Institutions named herein and for the pur-
poses indicated, for the two-year period beginning September 1,
1939 and ending August 31, 1941."

There follows a list of the various institutions with itemized
purposes and amounts set out under each one of them. It is significant
to note that the Legislature in this bill does not follow the practice
adopted in the General Departmental Appropriation Bill - S.B. No. 427 - of
singling out, specifically naming and identifying by number each and every
salaried position in all of the institutions, and in each instance making
a specific appropriation to pay the salary of the "person" filling a parti-
cular position.

For example, under the itemized appropriation for the Texas School for the Deaf, we find such general items as these:

| | "For the years Ending | |
|---|---|---|
| | August 31, 1940 | August 31, 1941 |
| 5. Cooks, eight, with meals, one for twelve months at $48 per month, one for superintendent at $37 per month for twelve months; other not to exceed $45 per month................................... | 3,093.00 | 3,093.00 |
| 8. Dining room girls, sixteen, with board; one for twelve months, none to exceed $34 per month............. | 4,998.00 | 4,998.00" |

Another characteristic of the items under the eleemosynary institutions appropriation bill is the almost universal provision for either "board" or "meals". A few examples follow:

| | "For the years Ending | |
|---|---|---|
| | August 31, 1940 | August 31, 1941 |
| 3. Bookkeeper, with board, twelve months.................................... | 900.00 | 900.00 |
| 11. Boiler operator, with meals........ | 400.00 | 400.00 |
| 33. Instructor, painting, eleven months, with one meal..................... | 1,155.00 | 1,155.00" |

There are no special riders to the appropriation for the Texas School for the Deaf, but "General Provisions" at the end of the bill contain the following pertinent paragraphs:

"Additional Employees' Compensation. When a necessity exists for additional help at any of the eleemosynary institutions the Board of Control shall first give to the superintendent its written approval and consent for such employment, and such help may be paid out of any local institutional receipts, including pay-patient funds, or out of support, maintenance, repair and improvement appropriations. When any additional employees, other than those for which specific salary appropriations have herein been made are employed, and are to be paid out of said non-salary appropriations or any other funds, such employees shall not be paid larger amounts than those provided in the specifically appropriated salaries for similar positions in such institutions or agency, and in the event

there are no similar positions within such institution then such additional employees shall not be paid larger amounts than those provided for similar positions in other State institutions, departments or agencies. In the event laborers, skilled laborers and mechanics cannot be obtained at the above mentioned salary scale, then the heads of such institutions may pay for temporary employment only not exceeding the prevailing wage scale paid in the localities where the temporary service is to be rendered. No additional employees may be hired without the written consent of the Board of Control." (Underscoring ours.)

"* * *

"Perquisites of Employees. * * *

"(b) Under written direction of the Board of Control all employees may receive board, room and laundry, except when otherwise limited." (Underscoring ours.)

It is apparent that the general rider to the eleemosynary institutions appropriation bill, first authorizes the hiring of additional help by the superintendent of an institution provided he obtains the written approval and consent of the Board of Control; and second employees may receive board, room and laundry as compensation upon written direction of the Board of Control, except in those cases under the itemized portion of the bill where there is a specific limitation.

There can be no question of the fact that the term "additional Help" as used in the first paragraph, above quoted, includes "part time" employment. Furthermore, there is no express prohibition against the employment of students as "additional help" on part time jobs.

Finally, there is nothing in the Act itself to inhibit the total compensation for "additional help" from being "board, room and laundry" as set out in subheading (b) under "Perquisites of Employees". Said subsection (b) specifies that "all employees may receive board, room and laundry, except when otherwise limited." While it does not expressly state that the total compensation of an employee may consist of "board, room and laundry", as distinguished from financial remuneration, it is our opinion that "board, room and laundry" are a recognized form of compensation for eleemosynary institutions to make, and that with the written consent and the approval of the Board of Control, the superintendent of such an institution may legally compensate a part time employee entirely in this manner. Both the superintendent of the institution and the Board of Control would be obliged to keep in mind the limitation contained in the second sentence of the paragraph under "General Provisions" entitled "Additional Employees' Compensation", said sentence reading as follows:

"When any additional employees, other than those for which
specific salary appropriations have herein been made are employed,
and are to be paid out of said non-salary appropriations or any
other funds, such employees shall not be paid larger amounts than
those provided in the specifically appropriated salaries for simi-
lar positions in such institutions or agency, and in the event
there are no similar positions within such institution then such
additional employees shall not be paid larger amounts than those
provided for similar positions in other State Institutions, depart-
ments or agencies."

The compensation an employee receives in the form of "board, room
and laundry" can easily be evaluated in terms of dollars and cents, and the
amount of work to be performed by the employee be made to conform thereto.

The character of the duties, functions, and work of an eleemosynary
or reformatory institution demands many part time employees. It would be im-
practical and uneconomical in many instances to keep a full time employee on
the staff. In several cases H.B. No. 256 designates part time employees in
the itemized section. The very term additional help primarily implies "part
time employment" to supplement full time employees where the latter need as-
sistance.

We again call attention to the custom of institutions with facilities
for board, room and laundry to compensate employees in this manner. For years
it has been the custom of the Texas School for the Deaf to employ students as
"additional help" with board, room and laundry as their full compensation. It
is a practical, economical and efficient practice which the Legislature plainly
intended should be continued.

The only limitation, express and unmistakably mandatory, is that
contained in the following language:

"No additional employees may be hired without the <u>written
consent of the Board of Control</u>." (Underscoring ours.)

and

"Under written direction of the Board of Control all em-
ployees may receive board, room and laundry, except when other-
wise limited."

We have carefully compared H.B. 256, Eleemosynary Institutions Bill
of the Forty-sixth Legislature with S.B. No. 140, Eleemosynary Institutions
Bill of the Forty-fifth Legislature, with particular reference to the appro-
priation for the Texas School for the Deaf. The two bills differ in no respect
in this situation.

Under the itemized portion dealing with the Texas School for the
Deaf, the purposes for which specific amounts are authorized are identical

With one or two exceptions in the two bills. The same is true of the "General Provisions" section at the end of the Act. The provision involving additional employees' compensation and board, room and laundry are the same in wording and content. Our purpose in checking the two bills so closely was to determine if there was indicated in any way a legislative intent to change the policy with respect to the appropriation for state eleemosynary institutions or the hiring and compensating of the employees thereof. It is evident that the Legislature recognized, as a concomitant of the character of such institutions, the necessity of leaving a sphere of control within which the superintendents and the Board of Control could function in taking on additional help.

You are advised that it is our opinion that you are authorized under the terms of the Eleemosynary Appropriation Bill - H.B. No. 256, Forty-sixty Legislature - to employ students on part time jobs without compensating them any more than to give them their room, board and laundry, provided you obtain the written consent and approval of the Board of Control both in respect to the employment and the compensation.

Trusting that we have fully answered your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

/s/ Dick Stout

By

Dick Stout
Assistant

APPROVED AUG 31, 1939

/s/ Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

mh (3-7-52)